## COUNTIES OF WASHINGTON, NEWPORT, BRISTOL AND KENT,

#### DURING THE SPRING CIRCUIT, 1860.

PRESENT:

Hon. SAMUEL AMES, Chief· Justice.
Hon. GEORGE A. BRAYTON, } Justices.
Hon. ALFRED BOSWORTH, }

## Town of Hopkinton *v.* Thomas A. Waite, Town Treasurer.

The warrant of commitment of a justice of the peace, committing a person furiously insane, who is at large, to the Butler Hospital for the Insane, is not void because neither it, nor the judgment of the justice of the peace issuing it, states the town in which the lunatic was arrested, nor because they do not state, that no recognizance was offered on the part of the lunatic that he shall not go at large until sound of mind; the former statement being merely of what the statute directs for the guidance of the hospital in collecting payment for the lunatic's support, and the latter, a statement only of what is presumed, until the contrary appears, from the fact of commitment.

Such omissions cannot, therefore, where the insane person is a pauper, avail the town in which he is settled in defence to a suit to recover the amount paid for his support at the hospital, by the town in which he was arrested.

Prior to July 1, 1857, when the Revised Statutes went into operation, no such payments at the hospital, made by the town in which the lunatic pauper was arrested could be

recovered of the town in which he was settled; and if made, were voluntary and irre-coverable.

The judge trying a cause, with a jury, has a discretion with regard to the order of proof; and it is no improper exercise of this discretion for him to allow a party, who has closed his evidence upon the mistaken supposition that a material fact is admitted, to submit evidence of the fact to the jury, after the objection·is made by the other party that the material fact has not been proved.

THIS was an action of assumpsit, brought by the town of Hopkinton against the defendant, as town treasurer of the town of West Greenwich, to recover a sum of money paid by Hopkinton for the support, in the Butler Hospital for the Insane, of Andrew Jackson Briggs, *alias* Nichols, a lunatic, upon the ground that the said Andrew was a pauper, settled in and chargeable to the town of West Greenwich.

The case was tried at the August term of this court for the county of Washington, 1859, before the chief justice, with a jury, under the general issue, when the plaintiffs, to support the issue on their part, submitted to the jury testimony tending to prove that the pauper was the son of Rowena Briggs, a single woman; that the said Rowena was the legitimate daughter of Anderson Briggs, who lived in West Greenwich from 1810 or 1812 to the time of his death, some twelve to twenty years ago, and that the mother of said Anderson was one Elizabeth or Betsey Briggs, who, besides Anderson, had two other sons, Henry and Jonathan. For the same purpose, and to show that the town of West Greenwich recognized said Anderson Briggs and Betsey Briggs as settled in said town and took control of them as chargeable to it, the plaintiffs offered sundry extracts from the files and records of the town of West Greenwich, some of which referred to a period as far back as the year 1791, among which was a certificate, that Elizabeth Briggs was let out with the poor of West Greenwich from the year 1791 to the year 1795; also a complaint, to the town council of West Greenwich, that Anderson Briggs was likely to become chargeable to that town, and the appointment of Jonathan Nichols as his guardian, and afterwards, upon the resignation of Nichols, the appointment of Royal Matteson as guardian of said Anderson; offering the records of said town of West Greenwich of the dates of July 28, 1828, March 25, 1833,

and of the 28th of June, 1834, for this purpose. To this evidence the defendant objected, but the court, notwithstanding the objection, permitted the same to pass to the jury.

In further maintenance of the issue on their part, the plaintiffs further offered the proceedings before Matthew C. Card, Esquire, a justice of the peace for the town of Richmond and county of Washington, resulting in the commitment by him of the pauper, as a furiously mad person, dangerous to be at large, to the Butler Hospital for the Insane, to which the defendant objected, but which, notwithstanding the objection, the court permitted *pro forma*, to pass to the jury as admissible evidence. These proceedings were, a complaint and warrant and recognizance for costs, in the usual form, both dated December 9, 1856; the former, signed by Pardon C. Burdick and addressed to Matthew C. Card, Esq. one of the justices, &c., and setting forth, under the oath of the complainant, " that Andrew J. Nichols, *alias* Andrew J. Briggs, now of said Hopkinton, laborer, is a lunatic, and so furiously mad as to render it dangerous to the safety of the good people of said county for him to go at large, is at large, against," &c. and praying advice, and that process might issue, and that " the said Andrew J. Nichols, *alias* Andrew J. Briggs, may be apprehended, and secured as by law in such cases is provided," &c. The warrant, under the seal of the justice, addressed in the usual form, commanded the officer to apprehend Nichols, *alias* Briggs, and to have him before Card, the justice, " or some other lawful authority, to be dealt with relating to the premises as to law and justice shall appertain."

It appeared by the officer's return upon the warrant, dated Richmond, December 10, 1856, that the lunatic was arrested on that day, and brought before the said Card, the justice.

The record made by Card of his proceedings as justice, upon the return of the warrant, was as follows: —

" Be it remembered, that at a justice's court, holden at Richmond, on the 10th day of December, A. D., 1856, on complaint of Pardon C. Burdick of Hopkinton, against Andrew J. Nichols, *alias* Briggs, charging him the said Nichols, *alias* Briggs, now

in Hopkinton, with being a lunatic, or insane, and a dangerous person to be at large, and is at large, and so furiously mad as to render it dangerous to the peace and safety of our county and good people of this state, and even the lives of his friends, for him to be at large, and he is at large;

" Present. M. C. CARD, Justice Peace;"

" Parties called, and both appeared in open court, and after an examination of witnesses and the said Nichols, *alias* Briggs, it is the opinion of the said court, that the said Nichols, *alias* Briggs, is an insane person, and that it is dangerous to the quiet and safety of the county and to the lives of his friends for him to be at large. It is therefore the judgment of said court, that said Nichols, *alias* Briggs, be removed to the Butler Hospital for the Insane, until he be restored to soundness of mind, or otherwise released according to law.

" M. C. CARD, Justice of the Peace."

The mittimus issued by the justice was as follows: —

" *The State of Rhode Island and Providence Plantations.*

" [L. s.] *Washington, Sc.* To the sheriff, his deputy, or to either of the town sergeants or constables in the county of Washington, and to the superintendent or keeper of the Butler Hospital for the Insane: Greeting:

" Whereas it appears to me the subscriber, one of the justices assigned to keep the peace in said county of Washington, on the complaint of Pardon C. Burdick of Hopkinton, that Andrew J. Nichols, *alias* Andrew J. Briggs of Hopkinton, is a lunatic, or insane, or so furiously mad as to render it dangerous to the safety of the good people of said county for him to go at large; and whereas said Nichols, *alias* Briggs, has this day been duly apprehended by complaint and warrant, and after a careful examination of said Nichols, *alias* Briggs, and evidence adduced, it is the judgment of said court that said Nichols, *alias* Briggs, be removed to the Butler Asylum for the Insane. You are, therefore, hereby required, in the name of said state, to take Andrew J. Nichols, *alias* Briggs, into your custody, and him con-

32 *

vey to the Butler Hospital for the Insane, and him deliver to the superintendent or keeper of said hospital; and you the said superintendent or keeper are alike required to receive the said Nichols, *alias* Briggs, into said hospital, and him safely keep until he be restored to soundness of mind, or be otherwise delivered therefrom by due course of law.

"Given under my hand and seal, at Richmond, this 10th day of December, A. D., 1856.

"MATTHEW C. CARD, Justice of the Peace."

It appeared by the officer's return upon the back of this mittimus, that on the 11th day of December, 1856, he took Nichols *alias* Briggs into his custody, conveyed him to the Butler Hospital for the Insane, and there delivered him to the superintendent or keeper thereof, as commanded.

After the plaintiffs had submitted their case to the jury in the opening, and the defendant had taken the point that the plaintiffs had given no proof that Andrew J. Briggs had no estate at the time of his apprehension and commitment, the court permitted the plaintiffs to offer proof to the jury upon that matter, notwithstanding the objection of the defendant; the counsel for the plaintiffs stating, that he should have offered such proof in its proper order, had he not supposed that the want of estate on the part of said Andrew was admitted by the defendant.

The jury having returned a verdict for the plaintiffs for the sum of $152.89, the defendant now moved for a new trial, upon the ground of error in law in the above rulings of the court.

*Wm. H. Potter,* for the motion.

1. The complaint, warrant, judgment, and mittimus are defective, illegal, and void. The jurisdiction of the justice being special and limited, the proceedings should, upon their face, show that he had jurisdiction. *Fitch* v. *Commissioners of Highways,* 22 Wend. 122; *Chandler* v. *Nash,* 5 Mich. 409; *Den* v. *Turner,* 9 Wheat. 541; *Powers* v. *People,* 4 Johns. 292; *People* v. *Miller,* 14 Johns. 370; *Latham* v. *Edgerton,* 9 Cow. 227; *Kempe's Lessee* v. *Kennedy,* 5 Cranch, 174; *Owen* v. *Jordan,* 27

Ala. 608; 1 Dutcher, 554; *Bradstreet* v. *Neptune Ins. Co.* 3 Sumn. 608; *Mathewson* v. *Sprague*, 1 Curtis, 457. The judgment of the magistrate is unconditional, that the lunatic be committed to the Butler Hospital for the Insane, without giving his friends, instead thereof, a right to give recognizance for him, as provided in the sixth section of the act relating to this subject. Dig. of 1844, p. 104. Again, the warrant does not state in what town the lunatic was arrested, and that he was arrested in Hopkinton.

2. To maintain this suit a compliance with the requisites of the statute is necessary. *Walpole* v. *Hopkinton*, 4 Pick. 358; *East Sudbury* v. *Sudbury*, 12 Ib. 1; *City of Boston* v. *Inhabitants of Amesbury*, 4 Metc. 278.

3. The court, after the plaintiffs had closed their case, and after the defendant had commenced arguing his case, permitted the plaintiffs to put in further evidence.

*Dixon* against the motion.

1. The complaint and warrant precisely conform to the sixth section of the act of 1844. Dig. of 1844, p. 104. The judgment also conforms to the act. The justice is to find the facts, and he is to *commit* unless a recognizance be given; and not, as supposed, *adjudge that he will commit*, unless a recognizance be given.

2. The proceedings show that the lunatic was arrested in Hopkinton; and the commitment states that he is of Hopkinton. Besides, the whole purpose of the requirement, to state the place of arrest in the mittimus, is, to show the hospital from what town they are to collect their account for his support.

BRAYTON, J. The first ground for a new trial set out in the petition of the defendant was waived at the hearing, and not insisted upon in the argument. In the argument, it was insisted, that the warrant of commitment was void, because neither the judgment of the justice before whom the lunatic was brought, nor his warrant of commitment, stated in what town he was arrested. By the original act authorizing the confinement in jail of a lunatic, so furiously mad as to be dangerous, it was provided, that the expenses of his support

in jail and of his commitment should be paid out of his estate, if he had any; and if not, by the town which might be chargeable with his support. This act was amended in October, 1847, so as to provide, that instead of being committed to the county jail, he should be committed to the Butler Hospital, or other hospital for the insane. In 1848, the act was further amended. By this amendment, it was provided, that if the support of the lunatic should *not* be chargeable upon any town *in this state*, then the town in which he should be *arrested* should be liable for the expenses of his commitment and support at the hospital. For the convenience of the directors of the hospital, and that they might be informed of the town in which the arrest was made, and so to what town they were to look for payment, it provided further, that the justice who should order the commitment should also state in his warrant, in what town the lunatic was arrested. The last provision was not made, however, for the purpose of rendering that town chargeable with the expenses, but for the information of the directors of the hospital. The omission of such notice in the warrant would not, and was not intended to relieve the town where the arrest was in fact made from the expenses, upon other proof of the arrest there. This provision is merely directory to the justice; and no one can complain of the omission except the directors of the hospital, for whose benefit only it was made.

Another ground insisted upon was, that the justice who tried this cause permitted the plaintiff, after having rested his cause in the opening, and after the defendant had taken the point that no evidence had been offered that the lunatic had no estate wherewith to pay the expenses, to put in proof upon that point. From the statement allowed by the justice it appears, that the omission to offer such proof in the opening was purely by mistake, under the misapprehension that the defendant had admitted the want of such estate. It was a matter in the discretion of the judge, and it was no improper exercise of that discretion, to permit evidence to be offered which was necessary to the plaintiff's case, and which he had prepared, but which he failed to offer in the proper stage of cause, only because he un-

derstood that the fact proposed to be proved was admitted by the other party.

Another ground assigned is, that the whole proceeding by the justice, the complaint, judgment, and mittimus are void; and so the commitment to the hospital was illegal and void, and insufficient to charge any town with the support of the lunatic. The complaint certainly sets forth all the facts necessary to give the justice jurisdiction to hear and determine the question, whether the person charged with being dangerous was a lunatic at large, and dangerous to the community. It charges that Andrew J. Briggs was a lunatic, and so furiously mad as to render it dangerous to the people that he should be at large, and that he was at large. This complaint made it the duty of the justice to issue his warrant to apprehend the accused, and upon examination into the truth of the matter charged in the complaint, to adjudge thereon, whether the complaint was true. He was also required, if the complaint proved to be true, to commit the person accused to the Butler Hospital for the Insane, unless a recognizance satisfactory to him should be offered, that the person charged should not be permitted to go at large until restored to soundness of mind. The warrant of commitment does not state that no such recognizance was offered to the justice before commitment. It states the judgment of the justice that the complaint was true, — that the person charged was a lunatic and dangerous to be at large, and that he had further adjudged that the lunatic be removed to the Butler Hospital; and he issues his mandate accordingly to the officer to commit, and to the hospital to receive and keep the lunatic. It is now insisted that the omission to state that no such recognizance was offered, renders this warrant void, — that such statement was necessary to show the jurisdiction of the justice, — that he had no power to commit, if such recognizance were offered. It is not pretended that any such recognizance was in fact offered; no such proof was offered. The justice had, therefore, in fact the power to commit, as he had committed the party to the hospital. The recognizance, or the offer of it, is not made necessary to the power of the justice to act. It is not necessary to give jurisdiction, or to confer upon him any power;

all the power necessary to the commitment is conferred and vested in the justice already, and will continue unless the recognizance be offered. If offered, the power to commit is to .cease, and not otherwise. Undoubtedly, every fact necessary to confer the jurisdiction or power upon the justice, acting within a special and limited jurisdiction, should appear upon the face of his proceedings. But does the same necessity exist to negative every fact which may take it away? We think not. It is to be presumed, at least, until the contrary appears, that the facts are as stated in the mittimus; and that they are all stated. If so, no recognizance was offered, and the power of the justice appears upon the process.

We do not see, however, when all these points are ruled against the defendant, how the plaintiff, under the law, can maintain this action. At the time the complaint was made against the lunatic in this case, and at the time of the trial, judgment, and commitment to the Butler Hospital, there was no law making any town liable for the expenses of the commitment and support of the lunatic, except that in which he had his last legal settlement, if he had any such legal settlement in any town in this state. It was only in case the lunatic had no legal settlement within the state, that the town in which he might be arrested was charged with these expenses. It was not until the Revised Statutes went into effect in July, 1857, that these provisions were changed. By the Revised Statutes it was provided, that where the lunatic was settled in this state, and should be arrested in a town other than that in which he had his settlement, the town in which he might be arrested should be liable in the first instance; and upon payment of the expenses might have its remedy over against the town where the lunatic was settled. Prior to the Revised Statutes, the lunatic had been committed, and thereby the town of West Greenwich, where this lunatic was settled, alone became chargeable with the expenses. The town of Hopkinton, though the arrest was made there, was under no legal obligation to.pay, and could not be compelled to do so. The payments made by that town have been voluntary on its part. It does not appear that any request was made to that

town by the defendants to pay on their account, and certainly not, that the plaintiffs have paid by compulsion. The payments made, therefore, were in their own wrong, and for the recovery thereof they are without remedy.